No. 85-125

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

KATHRYN ANN BUSHNELL,

        Plaintiff and Appellant,

   -vs-

GENE E. COOK, FRED BELL, COOK-BELL
REAL ESTATE, STORY HILLS EAST, a
Montana partnership, and JAMES A. BOS,
CLARANCE R. BROWN, KENNETH R. BROWN,
WILLIAM H. ERWIN, DONN R. ERWIN, et al.,

        Defendants and Respondents.

_____

APPEAL FROM:  District Court of the Eighteenth Judicial District,
              In and for the County of Gallatin,
              The Honorable Joseph B. Gary, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Nash, Wellcome, Frost, Guenther & Zimmer; Page
          Wellcome argued, Bozeman, Montana

     For Respondent:

          Morrow, Sedivy & Bennett; Edmund P. Sedivy argued,
          Bozeman, Montana
          Landoe-Brown Law Firm; Allan McGarvey argued, Bozeman,
          Montana

_____

                  Submitted:  April 22, 1986

                  Decided:  May 15, 1986

Filed MAY 15 1986

_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

The appellant, Kathy Bushnell, brought an action in the District Court of the Eighteenth Judicial District, Gallatin County against Gene Cook, Fred Bell, Cook-Bell Real Estate and the Story Hills East (SHE) partnership. The jury returned a verdict in favor of the defendants and judgment was entered in accordance with the verdict. The plaintiff moved for new trial. The District Court denied the motion. Plaintiff appeals from the judgment and denial of motion for new trial. We affirm.

Appellant raises five issues in this case.

1. Are the verdict and judgment supported by the evidence?

2. Did the court err in failing to instruct the jury on the breach of the implied covenant of good faith and fair dealing?

3. Did the court err in failing to instruct the jury on negligent misrepresentation?

4. Did the court err in failing to grant a new trial?

5. Did the court err in instructing the jury generally?

Respondent raises one issue on cross-appeal: did the court err in failing to award SHE partnership its reasonable attorney's fees?

When Kathy Bushnell, the appellant in this case, was 22 years old, she received a settlement of about $40,000 from a car accident. Her athletics trainer put her in contact with Gene Cook of Cook-Bell Real Estate. Cook understood she wanted an investment for her money and she was relying on him to recommend a good investment. He showed her several

- 2 -

properties, including Lot 45 of Story Hills East. The Story Hills East (SHE) development was a partnership, formed in 1973 to buy land from Winston Cox and subdivide it. Cox hired Overturf, Strand, and Associates, an architectural firm to assist him with planning and zoning. Overturf was managing partner of the SHE partnership from 1973-75 and Overturf and Cook shared the management from 1975-78. Strand was also a member of SHE partnership. In the course of getting the planned unit development approved by the Bozeman Zoning Commission, SHE hired Dr. John Montagne, a geologist to study the geology and soils of the area. Dr. Montagne warned of unstable soils in the area. However, Montagne and other experts testified that homes could be built on the soils, if special precautions were taken.

Kathy Bushnell decided to buy lot 45 of Story Hills East. She paid a total of $28,000, $20,000 down and $8,000 in installments over ten years. Cook advised Kathy that by subdividing the lot and selling it, she would maximize her investment. So in 1979, Cook put Kathy in contact with Robert Babb, Gallatin County Surveyor, to do the subdivision work. As a result the lot was divided into two lots, 45A and 45B. Thereafter, Kathy listed the lots with Radcliff Realty. Radcliff sold Lot 45A to Blackwood on April 13, 1981 for $19,000. In the fall of 1982, Radcliff received a telephone call and letter from Blackwood indicating there had been soil slippage on his lot, that he felt there were no suitable building sites on the lot and wanted his money back. As a result of this, Bushnell, Blackwood, Radcliff and Gary France, managing partner of the SHE partnership, met on December 31, 1982. They discussed various ways to settle the dispute. Eventually, they agreed to a compromise. Blackwood

got his money back from the developer, and was released from his contract. Bushnell got the land back, and she was released from the final payments of $5,582.80 owed to the partnership. She was also allowed to keep the payments and downpayment made by Blackwood.

In August, 1983, Bushnell filed a complaint against SHE partnership alleging damages for breach of contract or right to rescission and return of all money paid. At trial, she dropped the rescission claim and elected to keep the lot and sue for damages on the breach of contract claim.

The damages alleged by Bushnell were that the defendants failed to discover a fault line that ran through the property. However, at trial Dr. Montagne testified no fault line runs through the property. A fault does exist in the near vicinity, but Montagne testified a home properly built would not be damaged unless it was directly over or within fifty feet of the fault line.

The soil on Lot 45 has slipped downhill in places, however experts testified there were still suitable building sites on the property if adequate precautions were taken in building a home.

Bushnell alleged she was damaged because SHE partnership pastured cattle and horses on her land without paying her. However, at trial checks for pasture rent paid to Bushnell were introduced showing she had been paid for 1978, 1981, 1982. The lands were not used for pasture in 1979 or 1980.

Bushnell also alleged that the contract was breached because the SHE partnership did not finish the roads as required by the sales agreement by November 1, 1979. Cook testified that not all the roads were completed by November 1, 1979. He wrote to Bushnell in December, 1981, saying the

roads had not been completed because of slowness in selling the lots. He indicated that if Bushnell decided to build a home or found a buyer, to let him know and he would tell the contractor to finish that portion of the road. Bushnell did not contact him to ask that the road be finished.

Finally, Bushnell contended that the SHE partnership encumbered her title by leasing her lot for oil and gas exploration. The leasing agent testified at trial that he approached France about leasing the area in May, 1983. France explained that the ownership of Lot 45 was in dispute. The agent requested both SHE and Bushnell sign leases, and that both would be paid. He stated the company would release the party that didn't end up with title, but that party could keep the lease rental money. France agreed to this top leasing, but Bushnell did not. She later complained that France had encumbered her title by agreeing to the oil and gas lease.

After jury trial on issues, the jury returned a verdict in favor of defendants Cook, Bell, Cook-Bell Real Estate, and SHE partnership and against Bushnell on all issues.

Appellant's first contention on appeal is that the judgment and verdict are not supported by the evidence. Although it is not listed as an issue, counsel also contends in his argument that the District Court erred in refusing his motion for new trial based on lack of substantial evidence to support the verdict. In reviewing the claim that the verdict and judgment were not supported by evidence, we are aware that the evidence must be viewed in the light most favorable to the prevailing party. The standard of review is whether there is substantial evidence to support the verdict. Powers Manufacturing Co. v. Leon Jacobs Enterprises (Mont. 1985),

701 P.2d 1377, 1379, 42 St.Rep. 906, 908. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Plouffe (1982), 198 Mont. 379, 389, 646 P.2d 533, 538. Contrary to Bushnell's assertion that the evidence of damage to her was "basically uncontradicted," the evidence in this case was hotly disputed throughout trial and on appeal. However, in reading the transcript in the light most favorable to the defendants it is clear that there was sufficient evidence for the jury to decide in favor of the defendants on all counts. Likewise, we find the District Court was correct in refusing to grant a new trial on the basis of lack of sufficient evidence to support the verdict.

Next appellant argues the District Court erred in refusing to instruct the jury on breach of the implied covenant of good faith and fair dealing. Appellant argues the covenant of good faith and fair dealing should be applied to Cook-Bell as real estate agents and to SHE partnership, as developers.

It was not error to refuse to give the instruction as against Cook-Bell Real Estate because it was not shown at trial that Cook had actual knowledge of claimed defects in the land necessary to constitute bad faith. Further, while knowledge may be imputed to Cook as a member of the SHE partnership, it cannot be imputed from the SHE partnership to the Cook-Bell Real Estate partnership.

It was also not error for the District Court to refuse to give the bad faith instruction against the SHE partnership. In this case, the court instructed the jury on constructive fraud as follows:

> Constructive fraud is a breach of duty which, without an actual fraudulent intent, gains advantage to the persons in fault by misleading another to her prejudice.

The jury found no breach of duty by SHE partnership under this instruction which does not require a showing of fraudulent intent. An instruction on bad faith would require the plaintiff prove intentional concealment. If the plaintiff could not meet her burden of proof on constructive fraud, she could not meet the higher burden of proof on bad faith. Thus the instruction would have been superfluous.

Appellant also contends the District Court erred in failing to instruct on negligent misrepresentation. While the court did not instruct on negligent misrepresentation, it did instruct on constructive fraud. In Montana an action for negligent misrepresentation is an action for fraud, so the jury was adequately instructed. Falls Sand and Gravel Co. v. Western Concrete, Inc. (D. Mont. 1967), 270 F.Supp. 495, 502.

Appellant contends the District Court erred in not granting a new trial. There were two bases for a new trial. First, appellant contends the District Court erred in allowing the jury to view the property prior to the time plaintiff rested her case, and in not giving a cautionary instruction. The record shows counsel for plaintiff made no objection to jury view and did not request a cautionary instruction. This Court will not put a district court in error for a procedure to which appellant did not object. State ex rel. Department of Highways v. DeTienne (Mont. 1985), 707 P.2d 534, 537, 42 St.Rep. 1557, 1559.

Second, appellant contends the District Court should have granted a new trial on the basis of newly discovered evidence as to the correct survey corner of Lot 45. She

alleges that if the marker was wrong, the property line was wrong and the jury was shown the wrong lot.

> The standard for determining whether newly-discovered evidence is sufficient reason for a new trial is governed by the statute, section 25-11-102(4), MCA, which provides that the newly-discovered evidence must be that which the applicant could not with reasonable diligence have discovered and produced at the trial. Whether to grant or deny a new trial is within the sound discretion of the trial court. Fredricksen v. Fredericksen (Mont. 1980), 605 P.2d 1135, 1137, 37 St.Rep. 191, 193, and will not be overturned absent a showing of manifest abuse of that discretion. Giles v. Flint Valley Forest Products (1979), 179 Mont. 382, 588 P.2d 535, 538. Every presumption is indulged that the movant for a new trial on the ground of newly-discovered evidence could have secured the testimony for the former trial, and the movant must negative any negligence on his part. In Re Colbert's Estate (1904), 31 Mont. 461, 80 P. 248. The movant must show that such evidence came to his knowledge since the trial and that even through diligence it was not discovered earlier; it must also appear that its materiality will probably produce a different result on trial and it is not merely cumulative or only tending to impeach. State v. Estep (1936), 103 Mont. 78, 61 P.2d 830.

Walter v. Evans Products Co. (Mont. 1983), 672 P.2d 613, 616, 40 St.Rep. 1844, 1847.

In this case appellant did not show that she could not have discovered the new evidence with reasonable diligence, and that the new evidence would produce a materially different result. We hold the District Court did not abuse its discretion in refusing to grant a new trial.

Appellant claims the District Court erred in instructing the jury generally. In reviewing the jury instructions, we must consider them in their entirety and in light of the evidence introduced at trial. Brown v. North American Manufacturing Co. (Mont. 1978), 176 Mont. 98, 114, 576 P.2d 711, 721. Viewed in their entirety, the instructions fairly instructed the jury on the issues presented by the evidence.

Finally we turn to the issue on cross-appeal. Did the District Court err in failing to award attorneys fees to SHE partnership? SHE partnership sought attorneys fees under the election of remedies paragraph of the contract for deed between Bushnell and SHE partnership. It states:

> It is understood and agreed that the forfeiture privilege, a remedy in case of default above, under paragraph 9-a-c, shall not be exclusive and the Seller reserves the right to sue for specific performance or breach of contract if it elects not to exercise the forfeiture or foreclosure clauses above. In the event of litigation under this paragraph, the Buyer agrees to pay a reasonable attorney's fee for an [sic] on behalf of the Seller's attorney.

Attorneys fees are not available to SHE partnership under this section because this action was not instituted pursuant to the default provision of the contract.

We affirm the judgment of District Court in all respects.

<u>John C. Sheehy</u>
Justice

We Concur:

<u>J. A. Turnage</u>
Chief Justice

<u>John Conway Harrison</u>

<u>Frank B. Morrison</u>

<u>R. C. Gulbrandson</u>,

<u>William E. Hunt</u>
Justices